UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------X

THOMAS D. SHANAHAN,

                   Plaintiff,                10 Civ. 0742

   -against-                        OPINION

THE STATE OF NEW YORK, NEW YORK STATE
DIVISION OF HUMAN RIGHTS, DAVID A.
PATERSON, in his official capacity as
Governor, GALEN D. KIRKLAND, in his
official capacity as Commissioner,
KUMIKI GIBSON, in her former official
capacity as Commissioner and in her
individual personal capacity,
ALPHONSO DAVID, in his former official
capacity as Deputy Commissioner and in
his individual personal capacity, and
CAROLINE DOWNEY, in her capacity as
General Counsel and in her individual
personal capacity,

                  Defendants.

------------------------------------X

A P P E A R A N C E S :

        Attorney for Plaintiff

        QUELLER, FISHER, WASHOR, FUCHS & KOOL LLP
        233 Broadway, 18th Floor
        New York, NY  10279
        By:  Alan Serrins, Esq.

        Attorney for Defendants

        NEW YORK STATE OFFICE OF THE ATTORNEY GENERAL
        120 Broadway
        New York, NY  10271
        By:  Barbara Hathaway, Esq.

**Sweet, D.J.**

The defendants State of New York, New York State Division of Human Rights, Galen D. Kirkland (the "Commissioner"), Kumiki Gibson ("Gibson"), Alphonso David ("David") and Caroline Downey ("Downey") (collectively, the "Defendants") have moved pursuant to Rule 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure to dismiss the complaint of plaintiff Thomas D. Shanahan ("Shanahan" or the "Plaintiff") on the grounds that the court lacks jurisdiction and the complaint fails to state a claim upon which relief can be granted, and granting such other further relief as to the Court may seem just and proper.

Based on the conclusions set forth below, the motion is granted, and the complaint dismissed.

## Prior Proceedings

Shanahan filed his complaint against Defendants on February 1, 2010.

The instant motion to dismiss was filed on March 26, 2010, and was heard and marked fully submitted on September 15, 2010.

## The Facts as Alleged in the Complaint and the IG Report[1]

Shanahan was hired as Deputy Commissioner for External Relations for the New York State Division of Human Rights ("DHR") on or about March 19, 2007. He was responsible for legislative, press and media relations, as well as community outreach.

Shanahan was hired with the express understanding that he would wind up his private legal practice approximately one month after joining DHR. IG Rep. at 2. Despite this agreement, in November 2007, Shanahan asked Gibson, Commissioner of DHR at the time, for approval to engage in private legal work outside of regular business hours. Commissioner Gibson denied his request. Id. at 3. On or about March 11, 2008, Gibson learned that Shanahan was still representing at least one private

---

[1]     The March 19, 2009 report of the New York State Inspector General, entitled "DHR Deputy Commissioner Misused State Credit Card," is referred to as the "IG Report." Because the complaint refers to the IG Report (Compl. ¶ 32), this Court may take judicial notice of it. Rothman v. Gregor, 220 F.3d 81, 88 (2d Cir. 2000). Citations to the IG Report appear as "IG Rep. at ___." The IG Report is available at http://www.ig.state.ny.us/pdfs/DHR Deputy Commissioner Misused State Credit Card.pdf.

client. Id. In that same month, Plaintiff received a negative evaluation, in which he was rebuked for "serious judgment errors" and for improperly continuing to do legal work for private clients. (Compl. ¶ 27(c).)

The complaint alleges that Shanahan "discussed" an employee's request for a reasonable accommodation, "expressed disagreement" with the Defendants' treatment of another employee, and "opposed the denial" of three employees' requests for time off to observe a religious holiday. (Compl. ¶¶ 25(a), 27(a)-(b).) However, according to the complaint, it was only after Gibson denied Shanahan's request to carry on a private law practice, discovered his unauthorized outside practice of law, and issued a negative performance evaluation that Shanahan complained about discrimination to anyone other than to the individuals who, according to him, were the alleged perpetrators. (See Compl. ¶ 27(d), 30.) Specifically, on April 5, 2008, after receiving the negative evaluation, Shanahan allegedly reported discriminatory actions to Governor Paterson's staff. (Compl. ¶ 27(d).)

Following the resignation of Governor Eliot Spitzer, Gibson tendered her resignation, which was accepted on or about

2

April 7, 2008. (Id. ¶ 28.) Shanahan, who had tendered his resignation on April 3, 2008, returned to work at DHR on or about April 9, 2008. (Id. ¶¶ 28-29.)

Before leaving office, Gibson reported Shanahan's misconduct to the new Governor's staff. (Compl. ¶¶ 27(d), 31.) David, who was Deputy Commissioner at the time, also reported Shanahan's unlawful private practice of law and misuse of his State credit card to the Executive Chamber. (Compl. ¶ 27(d).) Jeffrey Mans, then-Assistant Secretary to the Governor for Labor Relations, referred the allegations regarding Shanahan's credit card use and operation of a private legal practice to the Inspector General ("IG") in June 2008. IG Rep. at 1.

According to the complaint, during the transition to the new Commissioner (between April 2008 and October 2008), Shanahan prepared memoranda in which he outlined several instances of allegedly unlawful actions by the prior administration. These alleged actions included the denial of the request for reasonable accommodation, including violation of contracting and procurement rules. (Compl. ¶ 30.)

3

On or about March 3, 2009, Shanahan submitted a "rebuttal" of the charges addressed by the IG to the Commissioner, in which he contended that the IG "improperly discounted Defendants Gibson's, David's, and Downey's retaliatory motivations and Defendants' inadequate training of new NYSDHR employees regarding reimbursable expenses and personal charges on the state travel cards." (Compl. ¶¶ 32-33.)

On March 6, 2009, the Commissioner offered to allow Shanahan to resign and to remain at DHR until April 6, 2009, in which case the IG report would indicate that he had resigned. (Compl. ¶ 34.) Shanahan chose not to resign.

The IG issued the IG Report on March 19, 2009, outlining its investigations and findings. Specifically, the IG found that Plaintiff had represented private legal clients while serving as a Deputy Commissioner, in disregard of the law, his ethical responsibilities, and the Commissioner's express denial of his request to do so. The IG found that Plaintiff was hired with the understanding that he would conclude his private practice shortly after joining DHR in March 2007. In its report, the IG cited an e-mail of April 19, 2007, from Shanahan to DHR General Counsel Downey, stating that he was arguing "hopefully

4

my last application to be relieved." IG Rep. at 2. The IG also
quoted a letter from Shanahan to an opposing counsel, in which
he wrote that, "I have a waiver from my new employer to 'wind-
up' affairs and a window to do so of April 11, 2007." Id. The IG
further found that, despite these representations, Shanahan
continued to engage in private legal work well after April 2007.
Id. at 2-3.

The IG also found that in November 2007, Shanahan
asked Gibson for approval to engage in private legal work
outside of regular business hours and that Gibson denied his
request. On or about March 11, 2008, Gibson learned that he was
still representing a private client. Id. at 3. The IG further
found that Shanahan had used State resources, including his
computer, to support his private practice of law. Id. at 7. The
IG concluded that Shanahan had engaged in this misconduct to
"supplement his government salary." Id. at 7.

The IG also found that Plaintiff had used his State
credit card to pay for a number of personal items. While
Shanahan revealed some of the charges to the Division, the
Division later discovered additional improper charges. Id. at 5.
These charges included expenses related to a personal trip in

5

July 2007, more than $250 in supermarket, restaurant, drug store and auto expenses over the course of three days in October 2007, food and gas expenses in November 2007, and improper tax, food and gas charges in mid-2007 and early 2008. Id. at 5-6. The investigation revealed "significant cash outflows" from Shanahan's bank records, and he admitted to the IG that he was in financial difficulty at the time. Id. at 6.

Shanahan had an opportunity to respond to the allegations during the investigation. The IG Report specifically addresses and rejects Shanahan's response to the allegations concerning proper outside legal practice, finding his arguments "at best, specious." Id. at 4. The IG also noted that Shanahan "offered several explanations . . . for his improper credit card charges," but it did not accept those explanations. Id. at 6.

The IG ultimately concluded that Plaintiff acted improperly in the following "significant" respects:

> Shanahan's use of his state card for personal expenses
> was not inadvertent, and . . . his private work was
> conducted with the intent to supplement his government
> salary. . . . Considering Shanahan's position in the
> Division and his significant experience as an
> attorney, his actions are a cause for significant
> concern. The Inspector General finds Shanahan's
> unrepentant attitude particularly troubling.
> Accordingly, the Inspector General recommended that

6

the Division take appropriate disciplinary action
against Shanahan.

Id. at 7.


On March 19, 2009, Shanahan's employment was
terminated. (Compl. ¶ 36.)


Following his termination, Shanahan sent a memorandum
to the Commissioner stating his belief that the Defendants'
actions "were motivated by retaliatory animus" (id. ¶ 37) and
alleging that "published reports of Defendants' allegations of
Shanahan's misconduct were disseminated causing damages to
Plaintiff's professional reputation." (Id. ¶ 39.)


The complaint alleges the filing of a charge of
discrimination with the Equal Employment Opportunity Commission
("EEOC") on or about April 14, 2009, and receipt of a right to
sue letter on November 6, 2009.


Based on these facts, the complaint alleges violations
of the Civil Rights Acts, 42 U.S.C. § 1983, the American with
Disability Act ("ADA"), the Age Discrimination in Employment Act
("ADEA"), the New York State Constitution and New York State
Civil Service Law § 75(b).

**The Applicable Standard**

On a motion to dismiss pursuant to Rule 12, all factual allegations in the complaint are accepted as true, and all inferences are drawn in favor of the pleader. Mills v. Polar Molecular Corp., 12 F.3d 1170, 1174 (2d Cir. 1993). The issue "is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Villager Pond, Inc. v. Town of Darien, 56 F.3d 375, 378 (2d Cir. 1995) (quoting Scheuer v. Rhodes, 416 U.S. 232, 235-36 (1974)).

Under Rule 12(b)(1), a facially sufficient complaint may be dismissed for lack of subject matter jurisdiction if the asserted basis for jurisdiction is not sufficient. See TM Patents, L.P. v. Int'l Bus. Machs. Corp., 121 F. Supp. 2d 349, 367-68 (S.D.N.Y. 2000); Peterson v. Continental Airlines, Inc., 970 F. Supp. 246, 249 (S.D.N.Y. 1997). Once subject matter jurisdiction is challenged, the burden of establishing jurisdiction rests with the party asserting that it exists. See Thomson v. Gaskill, 315 U.S. 442, 446 (1942); Malik v. Meissner, 82 F.3d 560, 562 (2d Cir. 1996). The party asserting subject

8

matter jurisdiction has the burden of proving, by a preponderance of the evidence, that the court has subject matter jurisdiction. See Malik, 82 F.3d at 562; Gallo v. United States, Dep't of Treasury, Internal Revenue Serv., 950 F. Supp. 1246, 1248 (S.D.N.Y. 1997) (citing Robinson v. Overseas Military Sales Corp., 21 F.3d 502, 507 (2d Cir. 1994)).

To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, --- U.S. ----, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Though the court must accept the factual allegations of a complaint as true, it is "not bound to accept as true a legal conclusion couched as a factual allegation." Iqbal, 129 S.Ct. at 1949 (quoting Twombly, 550 U.S. at 555). Plaintiffs must allege sufficient facts to "nudge [ ] their claims across the line from conceivable to plausible." Twombly, 550 U.S. at 570.

9

**The ADA and ADEA Claims Are Dismissed**

    A.    The Claims Are Barred by the Eleventh
            Amendment and the ADA and ADEA

        The Eleventh Amendment bars suits against States and
State agencies unless the State expressly waives its immunity or
Congress validly abrogates that immunity. See generally Seminole
Tribe of Fla. v. Florida, 517 U.S. 44, 72-73 (1996). The Supreme
Court has unequivocally held that Congress did not validly
abrogate this immunity in either the ADA or the ADEA. See Bd. of
Trustees v. Garrett, 531 U.S. 356, 374 (2001); Kimel v. Florida
Board of Regents, 528 U.S. 62, 92 (2000); see also Rolle v. New
York State Liquor Auth., No. 05 CV 3536, 2006 WL 2254807, at *3
(S.D.N.Y. Aug. 7, 2006). Thus, Plaintiff's ADA and ADEA claims
against the State, the Division, and the Defendants in their
official capacities are dismissed under Fed. R. Civ. P.
12(b)(1).

        Individuals, whether sued in their official or
personal capacities, may not be held personally liable for
damages under either the ADA or the ADEA. See Seils v. Rochester
City Sch. Dist., 192 F. Supp. 2d 100, 124 (W.D.N.Y. 2002); see
also, e.g., Corr v. MTA Long Island Bus, 199 F.3d 1321, 1999 WL

980960 (2d Cir. 1999) (unpublished) (affirming summary judgment against plaintiff and holding that "there is no right of recovery against individual defendants under the ADA"); Martin v. Chemical Bank, 129 F.3d 114, 1997 WL 701359 (2nd Cir.1997) (unpublished) (holding that "individual supervisors may not be held personally liable under the ADEA").

B.   The Complaint Fails to State a
     Claim under the ADA and ADEA

To state a retaliation claim, a plaintiff must plead that (1) he engaged in protected conduct, (2) defendants were aware of the protected conduct, (3) defendants took an adverse employment action against the plaintiff, and (4) a causal connection between the protected conduct and the adverse action existed. Auguste v. New York Presbyterian Med. Ctr., 593 F. Supp. 2d 659, 665 (S.D.N.Y. 2009) (citing Schiano v. Quality Payroll Sys., 445 F.3d 597, 608 (2d Cir. 2006)).

Claims under the ADA and ADEA must be commenced through the filing of a timely charge with the EEOC. Shanahan's termination is the only actionable event that occurred within 300 days of the filing of the charge. See Van Zant v. KLM Royal Dutch Airlines, 80 F.3d 708, 712 (2d Cir. 1996); Murray v.

11

<u>Visiting Nurse Servs. of New York</u>, 528 F. Supp. 2d 257, 266 (S.D.N.Y. 2007).

The complaint alleges no direct evidence of retaliatory intent and instead relies on the sequence of events. However, Shanahan's complaints, the majority of which were made before April 2008, were far too remote in time from his termination in March 2009 to permit any inference of causation. For a temporal relationship to permit an inference of retaliatory intent, the retaliatory action must follow closely on the protected conduct. <u>See</u> <u>Clark County Sch. Dist. v. Breeden</u>, 532 U.S. 268, 273-74 (2001) (holding that action taken 20 months after protected activity suggests no causal connection and citing with approval cases finding intervals of three and four months too long); <u>Hollander v. Am. Cyanamid Co.</u>, 895 F.2d 80, 85-86 (2d Cir. 1990) (a three and one-half month interval may be insufficient to establish a causal connection); <u>Reyes v. City Univ. of New York</u>, No. 06 Civ. 3639, 2007 WL 2186961, at *5 (S.D.N.Y. July 26, 2007) (citing <u>Clark County</u> for the proposition that "it is equally well settled that more than three or four months does not qualify as 'following closely'"); <u>Knight v. City of New York</u>, 303 F. Supp. 2d 485, 497-98 (S.D.N.Y. 2004), <u>aff'd</u>, 147 Fed. Appx. 221 (2d Cir. 2005);

12

<u>Nicastro v. Runyon</u>, 60 F. Supp. 2d 181, 185 (S.D.N.Y. 1999)
("claims of retaliation are routinely dismissed when as few as
three months elapse between the protected activity and the
alleged act of retaliation").

Here, Shanahan's complaints were made a year or more
before his termination, to and about Defendants Gibson, David
and Downey, and Shanahan was terminated under a new
administration. No inference of a causal connection can be made
as a matter of law. The complaints about the prior
administration to the Commissioner began in April 2008, nearly a
year before his termination, and Shanahan continued to make
similar complaints until October 2008. The five months between
the last alleged complaint in October 2008 and his termination
in March 2009 preclude any inference of causation, especially
given the intervening IG report.

The complaint fails to allege any facts to support a
claim of discrimination or hostile environment claims on
Shanahan's behalf. It does not allege that he is disabled or
that he was subjected to differential treatment because of his
age or any disability. There is no allegation that rises to the
level of severe and pervasive harassment, as required for a

13

hostile environment claim. See <u>Alfano v. Costello</u>, 294 F.3d 365, 374 (2d Cir. 2002); <u>Lewis v. N. Gen. Hosp.</u>, 502 F. Supp. 2d 390, 403 (S.D.N.Y. 2007). The complaint merely alleges a difference of opinion regarding the treatment of a few of Shanahan's co-workers and isolated comments about employees who had nothing to do with Shanahan or any protected group to which Shanahan belongs.

The first four causes of action, which allege violations of the ADA and ADEA, are therefore insufficient as a matter of law.

## The Equal Protection Claim Is Dismissed

The fifth cause of action alleges violation of the equal protection clause. However, in this Circuit, claims of retaliation for having complained of discrimination are not cognizable under the equal protection clause. <u>Bernheim v. Litt</u>, 79 F.3d 318, 323 (2d Cir. 1996). Given the availability of Title VII to redress such claims, the Second Circuit has declined to "break new constitutional ground" by recognizing such a cause of action. <u>Id.</u> To the extent the complaint asserts an equal protection claim based on discrimination, it fails to plead

14

facts to indicate that Shanahan was treated differently than similarly situated individuals on the basis of his age or any disability. Plaintiff's reliance on Mork v. Salt Lake County, No. 2:03-CV-686, 2005 WL 3050990 (D. Utah Nov. 15, 2005), and Baumgardner v. County of Cook, 108 F. Supp. 2d 1041 (N.D. Ill. 2000), is misplaced, as neither case involves a retaliation claim, as opposed to a discrimination claim, under the equal protection clause.

Shanahan's argument that his equal protection claim is based on "discrimination that creates a hostile or abuse working environment" (Opp. 15) also fails, because the complaint contains no allegation that Shanahan is disabled or was subjected harassment based on his own protected status. Thus, for the reasons discussed in connection with Shanahan's hostile environment claim under the ADA and the ADEA, the equal protection claim is dismissed.

**The Due Process Claim Is Dismissed**

Shanahan also asserts a due process claim in his fifth cause of action.

15

To prevail on a due process claim, a plaintiff must plead and prove that he was deprived of a liberty or property interest without the requisite process under the circumstances. See generally Mathews v. Eldridge, 424 U.S. 319, 333 (1976); Bd. of Regents v. Roth, 408 U.S. 564, 569-70 (1972). As an at-will employee, subject to dismissal at any time for any reason, Shanahan had no property interest in his employment.

The complaint also makes a "stigma-plus" claim based on allegedly stigmatizing statements made in the course of Shanahan's termination. Injury to one's reputation, without more, does not amount to the deprivation of a liberty interest protected under the Fourteenth Amendment. See generally Siegert v. Gilley, 500 U.S. 226, 233 (1991); Paul v. Davis, 424 U.S. 693, 708-09 (1976). Only where a plaintiff has sustained an injury to his reputation coupled with the loss of some more tangible interest or property right, without adequate process to clear his name, is there a cognizable stigma-plus claim. Segal v. City of New York, 459 F.3d 207, 212 (2d Cir. 2006). To sustain a stigma-plus claim, a plaintiff must show that: (1) the defendants made stigmatizing statements about him, (2) those statements were made public, and (3) the stigmatizing statements were made concurrently with or in the course of the loss of a

16

tangible interest, such as a government job. Id. A plaintiff is also required to allege that the stigmatizing statements are false. Id. at 213 n. 5. Also, for an at-will employee, no pre-deprivation hearing is required; the availability of a post-deprivation hearing is sufficient. Id. at 214. This is true even if the employee failed to pursue such a hearing. Anemone v. Metropolitan Trans. Auth., --- F.3d ---, No. 08-2646-cv, 2011 WL 9376, at *22 (2d Cir. Jan. 4, 2011) (hereafter Anemone II) ("An Article 78 proceeding provides the requisite post-deprivation process — even if [plaintiff] failed to pursue it.").

The complaint has not alleged that Defendants made any public statements whatsoever about Shanahan. Any allegedly stigmatizing statements and Shanahan's loss of public employment were the actions of two completely separate State agencies. The IG issued its report, making it public as it is directed to under Exec. Law § 53(4), and DHR terminated him. Defendants cannot be held liable on a stigma-plus theory "[w]here the 'stigma' and the 'plus' originate with different actors." Anemone v. Metropolitan Transp. Auth., 410 F. Supp. 2d 255, 269-71 (S.D.N.Y. 2006) (MTA IG not liable even though he was the source of the stigmatizing statements, where he did not impose the "plus" of termination); see also Casale v. Metropolitan

17

Transp. Auth., 47 A.D.3d 519, 520 (N.Y. App. Div. 2008)
(rejecting stigma-plus claim where MTA IG had authority to
investigate but not to reinstate plaintiff)

Shanahan has cited Brandt v. Board of Cooperative
Educational Services, 820 F.2d 41 (2d Cir. 1987), to support his
argument that the statements in the IG Report satisfy the
publication requirement. In Brandt, the Court held that the
publication requirement may be met where the stigmatizing
statements were placed in plaintiff's personnel file and were
likely to be available to prospective employers and that for
such a theory to apply, prospective employers must be likely to
gain access to the information. However, Brandt is inapposite.
According to the allegations in the complaint, Gibson and David
raised the issue of Shanahan's possible misconduct privately
with the new Governor's staff, as they were required to do by
law and consistent with their professional obligations.
Defendants had no control over the IG, and the complaint has not
alleged that any of the Defendants made any public statements
about Shanahan.

Shanahan has also contended that it "is of no
consequence that the termination decision was not made by the

18

same individuals who made stigmatizing statements," (Opp. 13),
but has cited no cases to support his contention. (Def. Mem. 11-
14.) Here, senior officials of one Division administration
advised the new Governor's staff, during a transition, of the
potential unethical and/or unlawful conduct of a high-ranking
appointee. The matter was referred to the IG, who then decided
to conduct an investigation and, after that investigation,
issued a report. A year after the initial referral, a different
Division administration terminated Shanahan's employment.

Here, as in Anemone, Defendants had no control over
the content of the IG Report, and the IG had no power to
terminate or take any other action with respect to Shanahan's
employment. Accordingly, the complaint fails to establish a
nexus between the "stigma" and the "plus."

Moreover, under these circumstances, no stigmatizing
statements were made by Defendants "in the course of" Shanahan's
termination.

The complaint also fails to allege that any of the
stigmatizing statements are false. Shanahan's rebuttal to the
Commissioner did not deny that he engaged in the conduct found

19

by the IG; rather, he simply offered excuses for his actions.
(See Compl. ¶ 33 (challenging Defendants' motives and claiming
that employees are inadequately trained regarding the use of
official State credit cards).) No stigma-plus claim lies where
the substantial truth of an allegedly stigmatizing statement is
not seriously at issue. See Codd v. Velger, 429 U.S. 624, 628
(1977); Smith v. Lehman, 689 F.2d 342,346 (2d Cir. 1982); Flood
v. County of Suffolk, 820 F. Supp. 709, 715 (E.D.N.Y. 1993).

      Finally, a stigma-plus claim fails where a plaintiff
had procedures available to attempt to clear his name. Numerous
courts have found this requirement satisfied by the availability
of a judicial review proceeding under CPLR article 78. See,
e.g., Segal, 459 F.3d at 214 ("We now hold that, in this case
involving an at-will government employee, the availability of an
adequate, reasonably prompt, post-termination name-clearing
hearing is sufficient to defeat a stigma-plus claim."); Spang v.
Katonah-Lewisboro Union Free Sch. Dist., 626 F. Supp. 2d 389,
397 (S.D.N.Y. 2009) ("[C]ourts have consistently held that
Article 78 proceedings provide sufficient procedural protection
as post-deprivation name-clearing hearings."). In addition to
the process that the Commissioner provided Shanahan, and his
offer to allow him to resign, Shanahan could have challenged his

20

termination in an article 78 proceeding. It is of no moment that Shanahan did not pursue such a challenge. See Anemone II, 2011 WL 9376, at *22.

Accordingly, the due process claim fails as a matter of law and is therefore dismissed.

**The First Amendment Claim Is Dismissed**

To maintain a First Amendment claim, a public employee must show that he spoke as a private citizen and not in the context of his official duties. Where he does not speak as a private citizen, the speech is not protected and the government employer has the right to take action in response to the speech. Garcetti v. Ceballos, 547 U.S. 410, 417-19 (2006); Weintraub v. Bd. of Educ., 593 F.3d 196, 203 (2d Cir. 2010).

Where a public employee successfully shows that he spoke as a private citizen, he must also allege that (1) he engaged in speech on a matter of public concern, (2) he suffered an adverse action, and (3) the speech was a motivating factor in the decision to take the adverse action. See Scott v. Coughlin, 344 F.3d 282, 287-88 (2d Cir. 2003). Even if a plaintiff

21

establishes these elements, defendants may prevail if they show
that they would have taken the same action regardless of the
speech. See Washington v. County of Rockland, 373 F.3d 310, 320
(2d Cir. 2004).

The complaint establishes that the alleged speech for
which Shanahan now seeks protection was made in Shanahan's
official capacity, not as a private citizen. The complaint
alleges only that during his tenure under Gibson, Shanahan
challenged the Commissioner and the Deputy Commissioner on
several personnel decisions. Even assuming a complaint of
discrimination, a Deputy Commissioner of a State agency is
expected to alert his supervisors to discrimination or to other
alleged abuses. The complaint does not allege that Shanahan
spoke publicly about these matters through "channels available
to citizens generally." Weintraub, 593 F.3d at 204. Rather, he
allegedly brought his concerns to his superiors within the
government.

Even if Shanahan spoke as a citizen and his speech
involved a matter of public concern, his claims must be
dismissed because the complaint establishes that there was no
causal link between any adverse action and his speech.

22

In the First Amendment context, an adverse action must
be more than de minimis. Specifically, only conduct that would
deter a similarly situated person of ordinary firmness from
exercising his constitutional rights constitutes an adverse
action. See Morrison v. Johnson, 429 F.3d 48, 51 (2d Cir. 2005)
(citing Washington, 373 F.3d at 320). Such actions may include
"discharge, refusal to hire, refusal to promote, demotion,
reduction in pay, and reprimand." Zelnick v. Fashion Inst. of
Tech., 464 F.3d 217, 226 (2d Cir. 2006) (quoting Morris v.
Lindau, 196 F.3d 102, 110 (2d Cir. 1999)). Here, the adverse
action at issue is Shanahan's termination, and this action was
taken by DHR (Compl. ¶ 36), which has Eleventh Amendment
immunity on this claim.  There is no allegation that the
individual Defendants engaged in any adverse action or that any
action was taken by General Counsel Downey. The actions of
Gibson and David in allegedly reporting Shanahan's misconduct to
the new administration not only are not adverse actions, but are
consistent with their responsibilities.

In any event, the large gap in time between the speech
and the termination precludes any inference of causation. As
noted above, there must be temporal proximity to establish

23

causation. See, e.g., Breeden, 532 U.S. at 273-74 (no causal connection suggested by 20 month gap); Gangadeen v. City of New York, 654 F. Supp. 2d 169, 185-86 (S.D.N.Y. 2009) (no temporal proximity where speech occurred in September 2007 and plaintiff was fired in March 2008). Here, Shanahan alleges that he engaged in the allegedly protected speech sporadically in 2007 and 2008. His termination occurred in March 2009, a year later.

Shanahan also alleges that he sent memoranda to the Commissioner between April 2008 and October 2008. While any claim for damages against the Commissioner, who is sued only in his official capacity, is barred by the Eleventh Amendment, the five months between October 2008 and March 2009 preclude any finding of causation. The only inference these facts sustain is that Shanahan was fired because of his misconduct.

Shanahan, as a member of the Division's senior management, expressed to his fellow managers of the Division his disagreement with the treatment of other employees. He then took his concerns "up the chain of command" to the Governor's office. As a senior staff member of an agency created to enforce anti-discrimination laws, Plaintiff would be expected to report harassment or discrimination. The alleged speech to the

24

Governor's office, made in connection with his proffered
resignation, does not establish that he spoke as a private
citizen. Shanahan was not speaking through channels available to
citizens generally, but in the context of his role as a senior
appointee resigning from State service.

Even assuming that systemic discrimination in a public
agency can be a matter of public concern, the speech upon which
Shanahan attempts to rely simply cannot be so characterized.
Plaintiff's allegations that he "expressed disagreement" with
actions taken toward another employee, Richard Libutti, and
"advised Defendant Gibson to abandon their plan to report Mr.
Libutti," and his claim that he "opposed the denials" of other
employees' requests for time off on Good Friday (Compl. ¶ 27(a)-
(b)) do not indicate that he raised issues of public concern.
These allegations simply describe Shanahan's disagreement with
personnel actions.

Shanahan also attempts to characterize several minor
events, in addition to his termination, as adverse actions for
purposes of a First Amendment claim. He claims that an alleged
threat, a negative evaluation, the "interrogation" of his staff,
and the search of his computer each constituted adverse actions.

25

However, none of these events constitutes "retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights constitutes an adverse action." Zelnik, 464 F.3d at 225; Kessler v. Westchester County Dep't of Soc. Servs., 461 F.3d 199, 207 (2d Cir. 2006) (event must be "more disruptive than a mere inconvenience or an alteration of job responsibilities").

Questioning or interrogating Plaintiff's staff does not rise to the level of an adverse action. See Eugenio v. Walder, No. 06-CV-4928, 2009 WL 1904526, at *10-11 (S.D.N.Y. July 2, 2009). Threats and reprimands are similarly not adverse actions. See Lucenti v. Potter, 432 F. Supp. 2d 347, 364 (S.D.N.Y. 2006) ("Reprimands, threats of disciplinary action, and excessive scrutiny do not constitute adverse employment actions."). A negative evaluation without further consequences does not constitute an adverse action, particularly in light of the fact that Shanahan appears to have been fired in connection with the IG report, not the negative evaluation a year earlier. See Menex v. City Univ. of New York, 578 F. Supp. 2d 598, 615 (S.D.N.Y. 2008). The search of a computer was not an adverse action, particularly given that it related to an allegation that Shanahan was conducting an improper private practice of law

26

using State equipment. See Leventhal v. Knapek, 266 F.3d 64, 73 (2d Cir. 2001).

The termination is the only adverse action for purposes of Shanahan's First Amendment claim, and, as discussed above, there is no evidence of a causal connection between Shanahan's allegedly protected speech and his termination. Moreover, several of these minor events occurred before any protected speech, so could not possibly have been retaliatory.

Finally, Shanahan contends that the reporting of his misconduct to the new Governor's staff constituted an adverse action. This cannot be so, because Gibson and David were duty-bound to report this information, and the action in response was taken a year later by others.

Shanahan has argued that he pled causation by referring to other individuals who allegedly received more favorable treatment.[2] He contends that he needs discovery to substantiate this argument and determine whether others were in

---

[2]     Even though the individual referred to in the complaint also misused her State credit card, she is not similarly situated to Shanahan: she was not a Deputy Commissioner, but rather a member of a union. In any event, the Division did not treat her differently. The Division issued a notice of discipline and sought to terminate her, but an arbitrator rejected the penalty of termination. (See Affidavit of Barbara K. Hathaway, Ex. A.)

fact treated differently. (Opp. 9.) However, a plaintiff may not save an insufficient pleading by making conclusory or speculative allegations and then asserting the need for discovery to see if those allegations are true. A plaintiff must have a good faith basis for his pleading before he files it. See L-7 Designs, Inc. v. Old Navy, LLC, No. 09 Civ. 1432, 2010 WL 532160, at *2 (S.D.N.Y. Feb. 16, 2010) ("L-7 should have had a good faith basis for its claims before it filed its pleadings, before it went fishing for documents in discovery."). Regardless, the alleged treatment of other employees does not change the allegations concerning whether Shanahan's speech was protected or whether he suffered adverse actions.

Shanahan has cited an April 8, 2008 memorandum in which Gibson allegedly referred to Shanahan's speech. (Opp. 10.) However, the alleged memorandum does not indicate that Gibson was in any way motivated by Shanahan's speech. Furthermore, any such inference would be illogical, given Plaintiff's admission that the Commissioner chastised Plaintiff for his improper practice of law in his March 2008 performance evaluation, before his April 5, 2008 complaint to the Governor's office.

28

Finally, Shanahan's First Amendment claim must be dismissed because the content of the IG Report and the timing of Shanahan's termination establish that the same action would have been taken, irrespective of Shanahan's speech and its status as protected or unprotected.

**State and City Law Claims Are Dismissed**

The seventh and eighth causes of action, under the New York State Human Rights Law ("HRL"), N.Y. Exec. Law § 290 et seq., are barred by the Eleventh Amendment as against the State, the Division, and the individual Defendants in their official capacities. New York did not waive its Eleventh Amendment immunity in enacting the HRL. See Heba v. N.Y. State Div. of Parole, 537 F. Supp. 2d 457, 471 (E.D.N.Y. 2007); Rumain v. Baruch College, No. 06 Civ. 8256, 2007 WL 1468885, at *2 (S.D.N.Y. May 18, 2007). To the extent Plaintiff seeks to assert claims against the individual Defendants in their individual capacities, they are also dismissed because individual defendants are not "employers" within the meaning of the HRL. Moroever, the complaint alleges Shanahan was employed the State and DHR. (Compl. ¶ 22.)

29

Similarly, the ninth and tenth causes of action, under the New York City Human Rights Law, are barred. The State of New York has sovereign immunity from claims under the City Human Rights Law, because "[t]he City of New York does not have the power to abrogate the immunity of the State." Feingold v. New York, 366 F.3d 138, 149 (2d Cir. 2004); Koumantaros v. City Univ. of New York, No. 03 Civ. 10170, 2007 WL 840115, at *5 (S.D.N.Y. Mar. 19, 2007). No claim lies against the individual Defendants for the same reasons discussed with respect to the State HRL.

The eleventh cause of action, under New York Civil Service Law § 75-b(2)(a)(ii), is similarly barred as a matter of law. New York did not waive its Eleventh Amendment immunity in Section 75-b. See Fry v. McCall, 945 F. Supp. 655, 661 (S.D.N.Y. 1996). Nor may a plaintiff assert a Section 75-b claim against individuals. Section 75-b allows suits only against "public employers," which is defined to include the State, but not State officials. Thus, numerous courts have concluded that individuals may not be sued under Section 75-b. See Roddini v. City Univ. of New York, No. 02 Civ. 4640, 2003 WL 435981, at * 5 (S.D.N.Y. Feb. 21, 2003); Fry, 945 F. Supp. at 666.

30

Moreover, by bringing a Section 75-b claim, a plaintiff is barred from asserting any other State law claims related to the alleged retaliation. Rigle v. County of Onondaga, 267 A.D.2d 1088, 1089 (N.Y. App. Div. 1999). Thus, this claim would require dismissal of Shanahan's other State law claims.

The twelfth and thirteenth causes of action assert claims under New York Civil Rights Law § 40, which protects the right of access to public accommodations. Employment discrimination actions have nothing to do with access to public accommodations. To the extent Plaintiff seeks to raise equal protection, due process and free speech claims under the State Constitution, these claims fail for the same reasons the federal constitutional claims fail, and they are thus dismissed.

## Conclusion

Based upon the facts and conclusions set forth above, Defendants' motion is granted and the complaint is dismissed.

It is so ordered.

New York, NY
January 24 , 2011

_____
ROBERT W. SWEET
U.S.D.J.